IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| MANDY FRAZIER,<br>*on behalf of* Trevor McDonald<br><br>    Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE[1],<br>Commissioner of Social Security,<br><br>    Defendant. | No. C06-3033-PAZ<br><br>**MEMORANDUM OPINION AND ORDER** |

The plaintiff Mandy Frazier ("Frazier") seeks judicial review of a decision by an administrative law judge ("ALJ") denying her application for supplemental security income benefits of behalf of her son, Trevor McDonald ("Trevor"). Frazier claims the ALJ erred in (1) failing to properly evaluate the opinions of one of Trevor's treating physicians, and (2) overlooking other evidence that supported his claim.

On March 12, 2003, Frazier protectively filed an application for supplemental security income benefits on behalf of her son Trevor, based on a claim of disability under Title XVI. She alleged Trevor's disability began December 6, 1999. The application was denied initially and on reconsideration. On October 17, 2005, following a hearing, ALJ George Gaffaney found that Trevor was not under a "disability" as defined by the Social Security Act. Frazier appealed the ALJ's ruling, and on March 30, 2006, the Appeals Council denied her request for review, making the ALJ's decision the final decision of the Commissioner.

---

[1] This case was filed originally against Jo Anne B. Barnhart, who was at that time Commissioner of the Social Security Administration ("SSA"). On February 12, 2007, Michael J. Astrue became Commissioner of Social Security. He therefore is substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d)(1).

On May 24, 2006, Frazier filed a timely Complaint in this court seeking judicial review of the ALJ's ruling. On June 20, 2006, with the parties' consent, Chief Judge Mark W. Bennett transferred the case to the undersigned for final disposition and entry of judgment. The matter is now fully submitted, and pursuant to 42 U.S.C. § 405(g), the court turns to a review of Frazier's claim for benefits.

The regulations describe in detail how the Commissioner determines whether a child is disabled. The determination requires a three-step evaluation that considers (1) whether the child is working at a substantial gainful activity level; (2) whether the child has a severe medically-determinable impairment; and (3) whether the child's impairment, or combination of impairments, meets, medically equals, or functionally equals the severity of a listed impairment. 20 C.F.R. § 416.924; *see Neal ex rel. Walker v. Barnhart*, 405 F.3d 685, 688-89 (8th Cir. 2005); *Marnell v. Barnhart*, 253 F. Supp. 2d 1052, 1075-77 (N.D. Iowa 2003).

In the present case, Trevor was born in 1999. He was not engaged in substantial gainful activity at any relevant time. The ALJ found Trevor to have severe impairments consisting of attention deficit hyperactivity disorder (ADHD), oppositional defiant disorder, and "possible bipolar affective disorder." He further found, and Frazier does not contest, that Trevor's impairments, singly or in combination, do not meet or medically equal a listed impairment. The ALJ also found Trevor's impairments are not "functionally equivalent" to a listed impairment. It is this finding that represents the fighting issue in the case.

For an impairment or combination of impairments to be functionally equivalent to a listed impairment, the child must have "marked" limitations in two functional areas or an "extreme" limitation in one functional area. To make this determination, it is necessary to evaluate the child's abilities in six "domains": (1) the ability to acquire and use information; (2) the ability to attend to and complete tasks; (3) the ability to interact and

relate with others; (4) the ability to move about and manipulate objects; (5) the ability to care for oneself; and (6) one's general health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

A "marked" limitation is defined in the regulations, in relevant part, as follows:

> (i) We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.
> (ii) If you have not attained age 3, we will generally find that you have a "marked" limitation if you are functioning at a level that is more than one-half but not more than two-thirds of your chronological age when there are no standard scores from standardized tests in your case record.
> (iii) If you are a child of any age (birth to the attainment of age 18), we will find that you have a "marked" limitation when you have a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score. . . .

20 C.F.R. § 416.926a(e)(2)(i)-(iii).

The regulations define an "extreme limitation," in relevant part, as follows:

> (i) We will find that you have an "extreme" limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or

3

> when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.
>
>    (ii) If you have not attained age 3, we will generally find that you have an "extreme" limitation if you are functioning at a level that is one-half of your chronological age or less when there are no standard scores from standardized tests in your case record.
>
>    (iii) If you are a child of any age (birth to the attainment of age 18), we will find that you have an "extreme" limitation when you have a valid score that is three standard deviations or more below the mean on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score.

20 C.F.R. § 416.926a(e)(3)(i)-(iii).

Three witnesses testified at the ALJ hearing: Trevor, Frazier, and Judy Winkelman, a certified family development specialist. Trevor testified only briefly and inconsequentially. Frazier testified Trevor has problems with anger, attention span, and his behavior. He has temper tantrums "any time he wants something and can't have it." They last up to half an hour. He throws himself on the floor, kicks, screams, hits, and calls people names. He seldom can do an activity for longer than five or ten minutes before he loses interest. He has problems at school. On some days, "they can't handle him." He rides the bus to school, but because he spits and runs up and down the aisle swearing, he is required to ride in a car seat.

Although he sometimes gets along with other children, at other times he is unable to get along with anyone. He will he kick and scream and demand to have everything his

4

way.  At home, if he is told to do something, he does the total opposite.  According to Frazier, "time outs" do not work, and she is unable to restrain Trevor physically because of his strength.  He also is resistant to dressing, bathing, and sleeping.

At different times, Trevor has taken Ritalin, Adderall, Strattera, and Concerta, all of which are used to treat ADHD; Remeron, an anti-depressant; and a medication to help him sleep.  The ADHD medications sometimes help, but they only work for awhile and have required constant readjustment.  Trevor and Frazier have gone to counseling, and it has been helpful.[2]

Judy Winkelman has worked with Frazier and Trevor since Trevor was only a few months old.  She is a self-employed certified family development specialist working as a contractor for the Housing and Urban Development office in Carroll, Iowa.  She described Trevor's behavior as follows:

> His hyperactivity and his lack of impulse control makes him a very high risk in situations like running out in front of cars, things like that.  Not – his impulse control is so short with other children that he's often aggressive with them.  He's been very aggressive with me at times, as well as his mother because he doesn't understand – he's got no patience.  It has to be his way, or he just flips.  And [Frazier]'s called me numerous times, and he's just screaming and yelling and swearing at her in the background, and she just doesn't know what to do, and I calm her down, and she tries to calm down to get him calm, but he will throw things, hit, kick, swear.  He has a really foul mouth when he gets very angry.

Winkelman has taken Trevor and Frazier on car trips, and Trevor tries to get out of the car, throws things at his mother and Winkelman, and tries to jump into the front seat.

Winkelman testified Frazier is bipolar, but she is good about taking her medications, and she "is one of the highest functioning bipolar parents that I've ever worked with."

---

[2] Frazier herself has been diagnosed as bipolar, and takes Depakote, Topamax, and Wellbutrin.

Although there are times when Frazier's parenting skills are low, "for the most part" she does well with parenting "considering what she's dealing with."

Trevor had his first psychiatric evaluation when he was not quite three years old, by Kathy Adams, ARNP. Winkelman attended the evaluation with Trevor, and told Adams that Trevor's behaviors were "intensive and beyond what would be typical and expected for a three-year-old." Winkelman reported that while Trevor can be very focused on what he wants, "he is also highly oppositional, persistent, and will not let things go. He also wants constantly to be in control and never expresses remorse for his behavior." Although Trevor did somewhat better in a daycare setting, he nevertheless was considered "quite difficult." Adams was told Trevor had a history of drastic mood swings, and he screamed and had fits for several minutes once or twice a day. Adams diagnosed Trevor as suffering from Oppositional Defiant Disorder, and he was placed on a trial of Tenex.

Over the next several months, Trevor's medications were adjusted on several occasions, but he continued to have problems. His concentration continued to be poor and there was little improvement in his behavior. In March 2003, Trevor attempted to hit his mother and Adams in the eye.

In an evaluation by Adams on February 24, 2004, she stated he had marked impairment in his cognitive/communicative development. She noted, "Trevor struggles significantly with ADHD. It is unusual to begin treatment for this below age 6; however, his behavior is so extreme that medication for behavior concerns began at age 3. His extremely short attention in combination with hyperactivity interferes with his ability to sustain attention for learning." He also had marked impairment of his concentration, persistence, or pace. She stated, "As described earlier, Trevor has marked hyperactivity and impulsiveness, as well as a low attention span, in spite of various medication trials." She further noted that Trevor had a significant problem with social development. "He constantly 'tests' his mother, as well as other care givers. He often has extreme temper

6

outbursts and becomes both verbally and physically aggressive. Once Trevor gets an idea in his mind, he seems simply unable to 'let it go.' He struggles in interactions/play with peers for the above reasons." In evaluating Trevor's personal development, she stated, "Trevor's low frustration tolerance contributes to limitations in self-care. If he is not immediately successful in a task he becomes upset. Also, he is now voiding and stooling in his pants. He had previously been toilet trained."

In May 2004, Trevor underwent a psychosocial evaluation by Therapyworks, Inc. in Council Bluffs, Iowa. He and his family were evaluated on six days for a total of 14.5 hours. During the evaluation, it was determined that due to Trevor's high level of impulsivity and activity and his poor sense of danger, he needed one-to-one assistance on the bus, at school, at home, and at the babysitter. He was developmentally delayed. His level of activity was extremely high, and his ability to stay focused was five minutes with a lot of redirection. After a session with the therapist while off of his medications, the therapist observed, "Trevor's mind seems to be racing much faster than any other child with ADHD that this therapist has seen in over 15 years of experience." According to Frazier, her boyfriend expressed concern that by the time Trevor was twelve years old, the boyfriend would find Trevor standing over him with a knife.

The above represents only a sampling of the plethora of evidence in the record concerning Trevor's psychological and educational problems. Indeed, the record is replete with evidence that, contrary to the ALJ's perfunctory findings, Trevor has at least marked limitations, if not extreme limitations, in four of the six relevant domains: the ability to acquire and use information, the ability to attend to and complete tasks, the ability to interact and relate with others, and the ability to care for oneself. In his ruling, the ALJ found, in an almost summary fashion, that Trevor had less than marked limitations in each of those four domains, and no limitations in the remaining two domains of moving about and manipulating objects, and his health and physical well-being. Because he found

Trevor was not markedly limited in two domains or extremely limited in one domain, the ALJ found Trevor not to be disabled.

The court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards, and whether the factual findings are supported by substantial evidence on the record as a whole. *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007) (citing *Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir. 1999), in turn citing *Clark v. Apfel*, 141 F.3d 1253, 1255 (8th Cir. 1998)); *Hensley v. Barnhart*, 352 F.3d 353, 355 (8th Cir. 2003). This review is deferential; the court "must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ."). Under this standard, "[s]ubstantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)); *accord Page* 484 F.3d at 1042 ("Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion." Quoting *Haggard*, 175 F.3d at 594); *Pelkey, supra* (quoting *Goff*, 421 F.3d at 789).

Moreover, substantial evidence "on the record as a whole" requires consideration of the record in its entirety, taking into account both "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Krogmeier*, 294 F.3d at 1022. The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (also citing *Cline*, *supra*).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Secretary of Health & Human Serv.*, 879 F.2d 441, 444 (8th Cir. 1989) (citing *Steadman v. S.E.C.*, 450 U.S. 91, 99, 101 S. Ct. 999, 1006, 67 L. Ed. 2d 69 (1981)). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record *de novo*." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, [the court] must affirm the [Commissioner's] decision." *Id.* (quoting *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992), and citing *Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989)); *accord Baldwin*, 349 F.3d at 555; *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citing *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)); *accord Krogmeier,* 294 F.3d at 1022 (citing *Woolf*, 3 F.3d at 1213). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Goff*, 421 F.3d at 789 ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion."); *accord Page*, 484 F.3d at 1042-43 (citing *Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004); *Travis v.. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007); *Cox v. Barnhart*, 471 F.3d 902, 906 (8th Cir. 2006)).

As noted above, the ALJ found Trevor did not have a marked limitation in any of the six domains. The court finds the ALJ improperly ignored or overlooked important evidence from Judy Winkelman and Kathy Adams, who had longstanding relationships with Trevor, and he gave scant attention to the reports from Trevor's teachers regarding

Trevor's many cognitive and behavioral problems. The ALJ also substantially discounted the opinion of Trevor's treating physician, Susan Teggatz, M.D., apparently because Dr. Teggatz relied in part on the history provided to her by Frazier. This was improper. *See Flanery v. Chater*, 112 F.3d 346, 350 (8th Cir. 1997) ( "A patient's report of complaints, or history, is an essential diagnostic tool.") (citing *Brand v. Secretary of H.E.W.*, 623 F.2d 523, 526 (8th Cir. 1980) ("[a]ny medical diagnosis must necessarily rely upon the patient's history and subjective complaints")).

The record as a whole contains substantial evidence that Trevor has at least marked limitation in four domains, i.e., acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for himself. Accordingly, his combination of impairments either meets or is functionally equivalent to Listing 112.11, Attention Deficit Hyperactivity Disorder, 20 C.F.R. Part 404, Subpart P, Appendix 1, § 112.11, and he is under a disability as defined by the regulations.

## *CONCLUSION*

For the reasons discussed above, the Commissioner's decision is **reversed**, judgment will be entered in favor of Frazier and against the Commissioner, and this case is **remanded** pursuant to sentence four of 42 U.S.C. § 405(g), for calculation and award of benefits.

**IT IS SO ORDERED.**

**DATED** this 28th day of September, 2007.

PAUL A. ZOSS
CHIEF MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT